**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA**

| | |
|---|---|
| Petters Group Worldwide, LLC, and Thomas J. Petters, <br><br>           Plaintiffs, <br><br> vs. <br><br> Mark Miller, <br><br>           Defendant. | Case No.: 05-2091 (JMR/FLN) <br><br> **ANSWER AND COUNTERCLAIM** |

Defendant Mark Miller respectfully submits this Answer and Counterclaim to the Complaint filed by Plaintiff Petters Group Worldwide, LLC, ("PGW") and Plaintiff Thomas J. Petters ("Petters"). Mr. Miller denies each and every allegation contained in Plaintiffs' Complaint except those expressly admitted herein.

**THE PARTIES**

1.   Mr. Miller is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 1 of Plaintiffs' Complaint, and therefore, Mr. Miller denies the allegations.

2.   Upon information and belief, Mr. Miller admits the allegations in paragraph 2 of Plaintiffs' Complaint.

3.   Mr. Miller admits the allegations in paragraph 3 of Plaintiffs' Complaint.

**JURISDICTION AND VENUE**

4.   Mr. Miller admits the allegations in paragraph 4 of Plaintiffs' Complaint.

# FACTS

## LOANS

5.      Mr. Miller is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 5 of Plaintiffs' Complaint, and therefore, Mr. Miller denies the allegations.

6.      Mr. Miller admits the allegations in paragraph 6 of Plaintiffs' Complaint.

7.      Mr. Miller admits the allegations in paragraph 7 of Plaintiffs' Complaint.

8.      Mr. Miller admits the allegations in paragraph 8 of Plaintiffs' Complaint.

## PETTERS GROUP LICENSING AGREEMENT WITH POLAROID

9.      Mr. Miller admits the allegations in paragraph 9 of Plaintiffs' Complaint.

10.     Mr. Miller admits the allegations in paragraph 10 of Plaintiffs' Complaint.

11.     With respect to the allegations in paragraph 11 of Plaintiffs' Complaint, Mr. Miller admits that he and Plaintiffs agreed that Mr. Miller would be paid a commission from gross sales arising out of the Polaroid relationship, but denies the remaining allegations.

## PETTERS' ASSISTANCE TO MILLER

12.     Mr. Miller admits the allegations in paragraph 12 of Plaintiffs' Complaint.

13.     Upon information and belief, Mr. Miller admits that Exhibit A to Plaintiffs' Complaint contains a true and correct copy of his correspondence with Petters.

14.     Mr. Miller admits that on or about December 5, 2002, he wrote a letter to Richard Menczynski regarding the amount Mr. Miller owed to Redtag. Mr. Miller admits

that in that letter, he stated that he would like to use his commission to repay Redtag. Mr. Miller denies the remainder of the allegations in paragraph 14 of Plaintiffs' Complaint, including the allegation that his commission was a mere 0.005%.

15. Upon information and belief, Mr. Miller admits that Exhibit B to Plaintiffs' Complaint contains a true and correct copy of his correspondence with Mr. Menczynski.

16. With respect to the allegations contained in Paragraph 16 of Plaintiffs' Complaint, Mr. Miller admits that he met with Petters in Minnesota in 2003, but Mr. Miller denies that the purpose of his 2003 meeting with Petters in Minnesota was discussing Miller's request for assistance; rather, the purpose was Petters' informing Miller that the Polaroid licensing arrangement was unsuccessful and that Petters would soon lose the Polaroid license. Further, Petters informed Miller that Miller would not receive any commissions for his work on the Polaroid agreement. Under those circumstances, Miller admits that he agreed to receive a payment in the amount of $150,000, and denies the remaining allegations.

17. Mr. Miller admits the allegations in paragraph 17 of Plaintiffs' Complaint.

18. Upon information and belief, Mr. Miller admits the allegations in paragraph 18 of Plaintiffs' Complaint.

**PETTERS' LOAN TO MILLER IN THE AMOUNT OF $100,000**

19. Mr. Miller denies the allegations in paragraph 19 of Plaintiffs' Complaint.

20. Mr. Miller admits that he signed a promissory note on November 21, 2003, and asserts that the terms of the notes speak for themselves, but Mr. Miller denies the remainder of paragraph 20 of Plaintiffs' Complaint.

21. Upon information and belief, Mr. Miller admits paragraph 21 of Plaintiffs' Complaint.

22. Mr. Miller denies the allegations contained in of paragraph 22.

23. With respect to the allegations contained in paragraph 23 of Plaintiffs' Complaint, Mr. Miller denies that he was obligated to make the alleged payment.

**PETTERS' LOAN TO MILLER IN THE AMOUNT OF $150,000**

24. Mr. Miller denies the allegations in paragraph 24 of Plaintiffs' Complaint.

25. With respect to the allegations in paragraph 25 of Plaintiffs' Complaint, Mr. Miller admits only that Exhibit E to Plaintiffs' Complaint appears to contain a true and correct copy of a check dated January 13, 2005, but denies the remaining allegations.

26. With respect to the allegations contained in paragraph 26 of Plaintiffs' Complaint, Mr. Miller denies that he was obligated to make the alleged payment.

27. Mr. Miller denies that any further responsive pleading is required in response to Paragraph 27 of Plaintiffs' Complaint.

**COUNT ONE**
**(DECLARATORY JUDGMENT)**

28. Mr. Miller admits the allegations contained in paragraph 28 of Plaintiffs' Complaint.

29. Mr. Miller denies the allegations contained in paragraph 29 of Plaintiffs' Complaint.

30. Mr. Miller admits the allegations contained in paragraph 30 of Plaintiffs' Complaint.

31. Mr. Miller denies the allegations contained in paragraph 31 of Plaintiffs' Complaint.

32. Paragraph 32 of Plaintiffs' Complaint does not contain an allegation sufficient for Mr. Miller to admit or deny; accordingly, if any such allegation does exist, it is denied.

## COUNT TWO
### (BREACH OF CONTRACT – PETTERS GROUP NOTE)

33. Mr. Miller admits the allegations contained in paragraph 33 of Plaintiffs' Complaint.

34. With respect to the allegations contained in paragraph 34 of Plaintiffs' Complaint, Mr. Miller asserts that the terms of the note speak for itself and denies the remaining allegations.

35. Mr. Miller denies the allegations contained in paragraph 35 of Plaintiffs' Complaint.

36. Mr. Miller denies the allegations contained in paragraph 36 of Plaintiffs' Complaint.

## COUNT THREE
### (QUANTUM MERUIT – PETTERS GROUP NOTE)

37. Mr. Miller denies the allegations contained in paragraph 37 of Plaintiffs' Complaint.

38. Mr. Miller denies the allegations contained in paragraph 38 of Plaintiffs' Complaint.

39. Mr. Miller denies the allegations contained in paragraph 39 of Plaintiffs' Complaint.

40. Mr. Miller denies the allegations contained in paragraph 40 of Plaintiffs' Complaint.

41. Mr. Miller denies the allegations contained in paragraph 41 of Plaintiffs' Complaint.

## COUNT FOUR
### (BREACH OF CONTRACT – PETTERS LOAN)

42. Mr. Miller denies the allegations contained in paragraph 42 of Plaintiffs' Complaint.

43. Mr. Miller denies the allegations contained in paragraph 43 of Plaintiffs' Complaint.

44. With respect to the allegations contained in paragraph 44 of Plaintiffs' Complaint, Mr. Miller admits that Petters is demanding that he repay an alleged loan, but denies the remaining allegations.

45. Mr. Miller denies the allegations contained in paragraph 45 of Plaintiffs' Complaint.

46. Mr. Miller denies the allegations contained in paragraph 46 of Plaintiffs' Complaint.

## COUNT FIVE
### (QUANTUM MERUIT – PETTERS LOAN)

47. Mr. Miller denies the allegations contained in paragraph 47 of Plaintiffs' Complaint.

48. Mr. Miller denies the allegations contained in paragraph 48 of Plaintiffs' Complaint.

49. Mr. Miller denies the allegations contained in paragraph 49 of Plaintiffs' Complaint.

50. Mr. Miller denies the allegations contained in paragraph 50 of Plaintiffs' Complaint.

51. Mr. Miller denies the allegations contained in paragraph 51 of Plaintiffs' Complaint.

## JURY DEMAND

52. Paragraph 52 of Plaintiffs' Complaint does not contain an allegation sufficient for Mr. Miller to admit or deny.

## **AFFIRMATIVE DEFENSES**

53. Plaintiffs' claims are barred as a result of a failure of consideration.

54. Plaintiffs' claims are barred by the doctrine of waiver and/or estoppel.

55. Plaintiffs' claims are barred in whole or in part as a result of Plaintiffs' fraud and fraudulent inducement, as more particularly set forth in Mr. Miller's Counterclaim.

56. Plaintiffs' claims are barred by the doctrine of illegality.

57. Plaintiffs' claims are barred in whole or in part by the doctrine of offset or recoupment.

58. Plaintiffs' claims are barred in whole or in part by the doctrine of accord and satisfaction.

## COUNTERCLAIM

Comes now Defendant Mark Miller, and for his Counterclaim against Plaintiffs, Petters Group Worldwide, LLC, ("PGW") and Thomas J. Petters ("Petters"), states and alleges as follows:

1. Miller is a resident of the state of California.

2. On information and belief, Petters Group Worldwide, LLC ("PGW") is a Delaware limited liability company with its principal place of business in Minnetonka, Minnesota.

3. On information and belief, Plaintiff Petters resides in Minnesota.

4. On information and belief, Plaintiff Petters is and was at all times material the chief executive officer of Plaintiff PGW, and in doing the things herein alleged was acting within the course and scope of such agency and employment.

5. This Court has jurisdiction over this matter under 28 U.S.C. § 1332. Venue is proper under 28 U.S.C. § 1391(a).

## FACTUAL BACKGROUND

6. In 2002, Miller negotiated an oral brokerage agreement with Plaintiffs. Pursuant to this contract. In consideration for assisting them in developing a licensing agreement and/or other relationships with Polaroid Corporation Miller was to receive a commission of .5% of all gross sales arising out of the Polaroid relationship.

7. Miller performed his obligations under the oral brokerage agreement, including introducing the parties and helping negotiate a licensing agreement between Plaintiffs and Polaroid Corporation, which developed into a flourishing, long-term business relationship.

8. On or about July 31, 2003, aware that Plaintiffs had not paid Miller, Plaintiffs entered into negotiations with Miller to resolve his contractual claims.

9. In order to induce Miller to sign the agreement and waive substantial, concealed rights and benefits, Plaintiffs made the following critical misrepresentations to Miller: (1) PGW was not making money under the contract with Polaroid, (2) PGW was in jeopardy of losing the Polaroid license, and (3) false reports about the factual status of Plaintiffs' relationship—and its existing, developing, and contemplated agreements—with Polaroid. These misrepresentations included concealment of Plaintiffs' plans to parlay its existing licensing relationship with Polaroid (initiated by Plaintiff) into an ownership interest.

10. These representations were false. At the time of these representations, Plaintiffs were enjoying substantial gross sales from the license agreement with Polaroid Corporation and, upon information and belief, were already planning to acquire Polaroid. The true material facts were known to Plaintiffs and concealed from Miller.

11. At the time Plaintiffs made the false representations, Miller was ignorant of the falsity of Plaintiffs' representations and believed them to be true.

12. Plaintiffs drafted a written agreement to resolve Miller's contractual claims, providing that in exchange for a cash payment, Miller would relinquish all further interest in PGW's gross sales from the Polaroid license.

13. Based upon his long history of both personal and professional dealings with Petters, Miller believed Plaintiffs and therefore signed the written agreement dated July 31, 2003. Had Miller known the truth, he would not have taken such action or accepted the proposed agreement.

14. In reliance on this fraudulently procured agreement, Plaintiffs have refused to compensate Miller for any gross sales enjoyed as a result of Plaintiffs' licensing relationship and ownership of Polaroid.

15. When it became apparent that Plaintiffs had mislead Miller, and that Plaintiffs intended to acquire Polaroid, Petters, acting on behalf of Plaintiffs, represented and agreed that Miller would be made whole upon the closing of that transaction. That, however, did not happen.

## COUNT ONE
### (BREACH OF CONTRACT)

16. Defendant restates and realleges the above paragraphs as if fully set forth herein.

17. In 2001, the Parties negotiated a brokerage agreement, agreeing that in consideration for assisting Plaintiffs in the development of a licensing agreement and/or other relationships with Polaroid Corporation, Miller would receive a commission of .5% of gross sales. Petters, acting on behalf of Plaintiffs, reaffirmed this obligation even after execution of the parties' July 31, 2003 agreement.

18. Miller fully performed all conditions and promises required of him under the brokerage agreement. Miller was instrumental in developing the Polaroid license agreement, and Plaintiffs later used that relationship as a platform to acquire ownership of Polaroid Corporation, which had a value at that time of almost $500 million. Over the years relevant to this suit, and as a direct result of Miller's efforts, Plaintiffs received substantial gross sales.

19. Plaintiffs materially breached their agreement with Miller by refusing and failing to honor the terms of the agreement—including refusing and failing to pay Miller the agreed-upon .5% commission on all sales from the beginning of Plaintiffs' relationship with Polaroid.

20. As a result thereof, Miller has been damaged in an amount in excess of $75,000, the precise amount to be determined at trial.

## COUNT TWO
### (FRAUD)

21. Defendant restates and realleges the above paragraphs as if fully set forth herein.

22. In July 2003, Plaintiffs and Miller entered into negotiations to resolve Miller's contractual claims against Plaintiffs.

23. At that time, Plaintiffs made material false statements to Miller about the factual status of the relationship and the existing, developing, and contemplated agreements between Plaintiffs and Polaroid—including but not limited to misrepresentations that (1) PGW was not making money under the contract with Polaroid, and (2) PGW was in jeopardy of losing the Polaroid license.

24. These representations were false, given Plaintiffs' substantial gross sales from the Polaroid License and Plaintiffs' plans to acquire Polaroid. Plaintiffs made these statements knowing their falsity, with the intent to deceive and defraud Miller, and to induce Miller to act in reliance on these representations.

25. At the time Plaintiffs made the false representations, Miller was ignorant of the falsity of Plaintiffs' representations and believed them to be true.

26. In reasonable reliance on these representations, and based upon a long history of dealings with Petters, Miller believed Petters and therefore signed the written agreement dated July 31, 2003, to relinquish all further interest in PGW's gross sales from the Polaroid license.

27. Had Miller known the truth, he would not have taken such action or accepted the proposed agreement.

28. In reliance on this fraudulently procured agreement, Plaintiffs have refused to compensate Plaintiffs for any gross sales enjoyed as a result of Plaintiffs' licensing relationship or ownership of Polaroid.

29. As a result thereof, Miller has been damaged in an amount in excess of $75,000, the precise amount to be determined at trial.

## COUNT THREE
### (PROMISSORY ESTOPPEL)

30. Defendant restates and realleges the above paragraphs as if fully set forth herein.

31. Plaintiffs deliberately led Miller to believe that, in exchange for certain consideration, he would receive a commission of .5% of gross sales.

32. Plaintiffs made these false assurances and misrepresentations with the purpose and intent of inducing Miller's continued efforts, including his finding, initiating, and helping negotiate a licensing agreement between Plaintiffs and Polaroid Corporation.

33. As a result thereof, Miller has been damaged in an amount in excess of $75,000, the precise amount to be determined at trial.

## COUNT FOUR
### (UNJUST ENRICHMENT)

34. Defendant restates and realleges the above paragraphs as if fully set forth herein.

35. Plaintiffs knowingly received the benefit of Miller's finding, initiating, and helping negotiate a licensing agreement between Plaintiffs and Polaroid Corporation.

36. Plaintiffs knew that Miller had undertaken the effort of finding, initiating, and helping negotiate a licensing agreement between Plaintiffs and Polaroid Corporation.

37. As more specifically enumerated in this complaint, Plaintiffs have been unjustly enriched by their breach of contract, fraud, and misrepresentation,

38. Under the circumstances, it is manifestly unjust for Plaintiffs to reap the benefit of Miller's efforts without appropriately compensating Miller.

39. As a result thereof, Miller has been damaged in an amount in excess of $75,000, the precise amount to be determined at trial.

## COUNT FIVE
### (NEGLIGENT MISREPRESENTATION)

40. Defendant restates and realleges the above paragraphs as if fully set forth herein.

41. Plaintiffs made the representations recited in Count Two with reckless disregard for their truth or falsity, or with reckless disregard for whether the representations were contrary to Plaintiffs' true intentions in order to induce Miller into entering the July 2003 agreement.

42. Miller reasonably relied on Plaintiffs' representations by signing the written agreement dated July 31, 2003.

43. As a result thereof, Miller has been damaged in an amount in excess of $75,000, the precise amount to be determined at trial.

## JURY DEMAND

44.     Defendant and Counterclaim Plaintiff hereby demand a jury trial of all issues so triable.

WHEREFORE Defendant requests judgment as follows:

1.     For an Order dismissing Plaintiffs' Complaint and granting Defendant judgment on his Counterclaims;

2.     Defendant be awarded damages in an amount appropriate to compensate him for Plaintiffs' actions as described herein;

3.     For an award of Defendant's expenses, costs, and disbursements, as permitted by law; and

4.     For such other and further relief as to the Court is just and equitable, including rescission or reformation of the agreements at issue.

DATED:  October 9, 2006          **ROBINS, KAPLAN, MILLER & CIRESI L.L.P.**

By:   s/ Thomas C. Mahlum
        Thomas C. Mahlum (MN #0259391)
        Damien A. Riehl (MN #0322428)

2800 LaSalle Plaza
800 LaSalle Avenue
Minneapolis, MN 55402-2015
612-349-8500

**ATTORNEYS FOR
MARK MILLER**